## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ATLANTIS SERVICES, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO. 16-10864-DHH** |
| ASIGRA, INC. | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

### October 23, 2017

Hennessy, M.J.

     This matter is before the court on Defendant Asigra, Inc.'s ("Asigra") Motion for Judgment on the Pleadings. (Docket #12). Plaintiff Atlantis Services, Inc. ("Atlantis") has filed a response, (Docket #17), and a hearing on the motion was held on August 4, 2017, (Docket #19). Also before the court is Asigra's Motion to Strike the Affidavit of Paul Pathiakis, (Docket #23), to which Atlantis filed a response, (Docket #24). Both matters are now ripe for adjudication. For the reasons that follow, Asigra's Motion to Strike (Docket #23) is ALLOWED, and Asigra's Motion for Judgment on the Pleadings (Docket #12) is ALLOWED IN PART AND DENIED IN PART. Judgment shall be entered in favor of Asigra on count VII of the complaint.

## I.    BACKGROUND

    On April 15, 2014, plaintiff Atlantis Services, Inc. ("Atlantis"), a Massachusetts corporation based in Uxbridge, Massachusetts and defendant, Asigra, Inc. ("Asigra"), a Canadian corporation located in Toronto, Ontario, entered into an agreement whereby Atlantis would

provide computer software services to Asigra. (Docket #1 at ¶¶ 3-5). In exchange, Asigra agreed to pay Atlantis $125.00 per work hour. (Id. at ¶ 6). The scope of services to be provided appear to have been set out orally and is captured in a document entitled Asigra Large System Project Deliverable, which details a conversation between the parties outlining the specifications of a software product to be designed by Atlantis. (Id. at ¶ 5, Exhibit A).

Project completion was initially anticipated to take 2000 hours, referred to as "one work year." (Docket #1 at ¶ 6). However, this time frame was continuously shortened by Asigra throughout the project lifetime. (Id. at ¶ 7). During a May 8, 2014 phone call, Aram Farajun, CEO and principal owner of Asigra, asked Paul Pathiakis, the CEO of Atlantis, whether Atlantis could accelerate the development time.[1] (Id. at ¶ 8, Docket #22 at ¶ 4). In response, Atlantis told Asigra that the only way to complete the project on an accelerated schedule would be to use code from Atlantis' own appliance product (the "Appliance Code").[2] (Docket #1 at ¶ 8). In what it contends in its motion papers is an additional contract, during this phone call, Atlantis granted Asigra a limited right-to-use its Appliance Code and agreed to setup a call center for product support provided that Asigra pay all invoices and agree to pay Atlantis to service the product. (Id. at ¶¶ 9-11; Docket #17 at 1).

By June 7, 2014, Atlantis completed the project using its code and Asigra "took delivery and accepted the project as conforming." (Docket #1 at ¶¶ 13, 15). On June 20, 2014, Atlantis sent Asigra its final invoice itemizing its fees and requesting payment. (Id. at ¶¶ 16-17). In discussions regarding payment, Asigra acknowledged the accuracy of the debt and agreed to pay the invoice provided Atlantis assign Asigra the rights to its code. (Id. at ¶¶ 17-18). Atlantis refused

---

[1] Aram Farajun is also known as David Farajun. (Docket #22 at ¶ 4).

[2] Atlantis copyrighted the Appliance Code on February 9, 2016. (Docket #13-2).

to assign its rights to the code, limited or otherwise, absent Asigra's performance of the purported second agreement.  (Docket #1 at ¶ 19).

On May 11, 2016, Atlantis filed suit against Asigra alleging claims of breach of contract (count I), misappropriation of intellectual property (count II), trade secret misappropriation (count III), common law misappropriation (count IV), unfair and deceptive practices (count V), unjust enrichment (count VI), and copyright infringement (count VII).  (Docket #1).  Atlantis asserts that Asigra has copied substantial portions of the Appliance Code program, distributed works containing material copied from the Appliance Code, and created derivative works based on the Appliance Code.  (Id. at ¶ 21).  On November 18, 2016, Asigra moved for judgment on the pleadings on all counts other than count I.  (Docket #12).

II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial."  A court reviews motions for judgment on the pleadings under a standard that is essentially the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole."  Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006).  Facts contained in the pleadings are viewed in the light most favorable to the nonmovant, and all reasonable inferences are drawn in its favor.  Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007).  In reviewing a motion under Rule 12(c), the court may consider "documents the authenticity of which are not disputed by the parties; documents central to the plaintiff's claim; and documents sufficiently referred to in the complaint.  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)) (alterations omitted).  "Judgment on the pleadings is proper 'only if the uncontested

and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Zipperer, 493 F.3d at 53 (quoting Aponte-Torres, 445 F.3d at 54).

III.    ANALYSIS

A.    Motion to Strike

On August 4, 2017, the court held a hearing on Asigra's Motion for Judgment on the Pleadings. (Docket #19). At the hearing, the court established a brief chronology of the parties' relationship. (Docket #20 at 3-9). Missing from this chronology was the exact date of the telephone conversation between the parties during which the alleged second contract was formed. (Id. at 5-6). Neither party was able to provide this date at the hearing, although it was agreed that, by necessary implication, the conversation must have occurred prior to project's completion date of June 7, 2014. (Id. at 8-9). Hence, the court asked the parties to submit an affidavit or stipulation establishing when this telephone call occurred, and indicated that this filing would be part of the record that the court would consider on the motion. (Id. at 39, 42-43).

On August 23, 2017, Atlantis filed an affidavit by Pathiakis. (Docket #22). In the first five paragraphs of the affidavit, Pathiakis describes his relationship with Atlantis; details the terms of the original contract; and states that, on May 8, 2014, when asked by Farajun if he could accelerate the development time, he agreed to incorporate the Appliance Code into Asigra's product. (Id. at ¶¶ 1-5). Asigra does not seek to strike these statements. (Docket #23). Nor does Asigra challenge the last two statements in the affidavit which note that Pathiakis' telephone service provider is T-Mobile. (Docket #22 at ¶¶ 12-13; Docket #23). Asigra does challenge the remaining statements of the affidavit and asks that they be stricken. (Docket #23 at 1).

The statements at issue seek to describe the content of the alleged second contract. (Docket #22 at ¶¶ 6-11). The court never requested this information and the parties did not seek leave, nor

did the court grant it, to file additional evidence addressing this matter. For that reason alone, the contested portions of the affidavit are properly stricken. The court also notes that these statements do not conform with paragraph 10 of the complaint, in which Atlantis alleges that "[t]he limited right to use was contingent upon Asigra paying Atlantis' invoices <u>and</u> granting Atlantis all the servicing revenue of the new products." (Docket #1 at ¶ 9) (emphasis added). In his affidavit, Pathiakis states that "the consideration for the second contract was to be a Master Service Agreement for servicing the System for Asigra" and that "[p]ayment for the initial work for hire contract was separate and distinct from the income we were expecting to derive under the Master Service Agreement." (Docket #22 at ¶¶ 7, 11). Leave has not been granted to amend the complaint, and the court specifically warned the parties that it did not "want this to be a moving target where, well, that argument doesn't work, so we're going to have to now say something different. I don't really want to see that." (Docket #20 at 30). For these reasons, the Motion to Strike shall be allowed.

B.      Copyright Claim

Copyright holders may transfer a nonexclusive right to use a copyright by either express or implied licensing of the copyrighted work. <u>See</u> <u>Estate of Hevia v. Portrio Corp.</u>, 602 F.3d 34, 40-41 (1st Cir. 2010). An implied license is of limited scope; it "simply permits the use of a copyrighted work in a particular manner." <u>Id.</u> (quoting <u>I.A.E., Inc. v. Shaver</u>, 74 F.3d 768, 775 (7th Cir. 1996)). "Copyright infringement occurs when another party exercises, without permission or other justification, any of the exclusive rights granted to the copyright owner." <u>Montalvo v. LT's Benjamin Records, Inc.</u>, 56 F. Supp. 3d 121, 129 (D.P.R. 2014). Where a copyright owner has granted a nonexclusive license to another party, that party's "[u]ses of the copyrighted work that stay within the scope of [the] nonexclusive license are immunized from

infringement suits." <u>John G. Danielson, Inc. v. Winchester-Conant Props., Inc.</u>, 322 F.3d 26, 40 (1st Cir. 2003).

The parties agree that Atlantis orally granted Asigra a nonexclusive license to use its Appliance Code in its product during a phone call on May 8, 2014.  (Docket #1 at ¶ 9; Docket #22 at ¶ 4).  Atlantis now asserts a copyright infringement claim against Asigra pursuant to 17 U.S.C. § 501, alleging that Asigra is infringing Atlantis' copyrighted works by using Atlantis' Appliance Code in the Asigra product.  (Docket #1 at ¶¶ 51-56).  Atlantis states that it unilaterally revoked the nonexclusive license when Asigra failed to implement the software service agreement that it asserts was the consideration for Asigra's use of the Appliance Code.  (Docket #1 at ¶ 19; Docket #17 at 6).

"An implied license is revocable . . . where no consideration has been given for the license. <u>Keane Dealer Servs. v. Harts</u>, 968 F. Supp. 944, 947 (S.D.N.Y. 1997); <u>see</u> <u>Avtec Sys. v. Peiffer</u>, 21 F.3d 568, 574 n.12 (4th Cir. 1994) ("an implied license is necessarily nonexclusive and revocable absent consideration").  Conversely, "a 'nonexclusive license may be irrevocable if supported by consideration.'" <u>Carson v. Dynegy, Inc.</u>, 344 F.3d 446, 451 (5th Cir. 2003) (quoting <u>Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc.</u>, 128 F.3d 872, 882 (5th Cir. 1997)).  "[T]his is so because a nonexclusive license supported by consideration is a contract." <u>Id.</u> (quoting <u>Lulirama</u>, 128 F.3d at 882).

Asigra argues that Atlantis cannot retroactively revoke its license to the Appliance Code because the agreement between the parties allowing Asigra's use of the Appliance Code is supported by consideration.  (Docket #13 at 6).  Atlantis acknowledges that if this was a case concerning non-payment of the last invoice for the work for hire contract, Asigra would be correct. (Docket #17 at 6).  However, Atlantis asserts that the parties entered into a second contract after

Asigra sought to have Atlantis speed up its work. (Id.). Atlantis states that, as consideration for Atlantis' agreement to use its Appliance Code in the Asigra product, Asigra agreed to provide the servicing revenue for the product to Atlantis. (Id.). However, this is only part of the consideration that Asigra agreed to provide Atlantis in return for the Appliance Code.

In its complaint, Atlantis asserts that "[t]he limited right to use [the Appliance Code] was contingent upon Asigra paying Atlantis' invoices and granting Atlantis all the servicing revenue of the new products." (Docket #1 at ¶ 10) (emphasis added). There is no dispute that Asigra paid some of the invoices submitted by Atlantis, including for work done after the May 8, 2014 phone call. (Docket #13-1). Hence, Asigra did provide partial consideration for Atlantis' agreement to incorporate the Appliance Code in the Asigra product. Therefore, Atlantis may not proceed on a theory of copyright infringement.[3] If there is a remedy, it lies for breach of contract. See Jacobsen v. Katzer, 535 1373, 1380 (Fed. Cir. 2008) ("Generally, a 'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement' and can sue only for breach of contract.") (quoting Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1121 (9th Cir. 1999); Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998)).

I note that even if Atlantis had plead that the limited right to use the Appliance Code was contingent only upon Asigra granting Atlantis all the servicing revenue of the new products, Atlantis would still be unable to proceed on a copyright infringement claim. "Modifications have long been recognized in law as valid, without additional consideration[.]" Beal Bank S.S.B. v. Krock, 1998 U.S. App. LEXIS 22051, at *22 (1st Cir. Sept. 3, 1998) (quoting Roddy & McNulty Ins. Agency, Inc. v. A.A. Proctor & Co., 16 Mass. App. Ct. 525, 536 (1983)) (alterations omitted).

---

[3] As the court has found that Atlantis may not proceed on its copyright infringement claim, there is no need to address Asigra's preemption arguments. (See Docket #20 at 36).

"The contract, when modified by the subsequent oral agreement, is substituted for the contract as originally made, and the original consideration attaches to and supports the modified contract." Id. (quoting Thomas v. Barnes, 156 Mass. 581, 584 (1892)).  Hence, Asigra's partial payment of the invoices, even prior to May 8, 2014, provide sufficient consideration for the oral modification of the contract on May 8, 2014.

Accordingly, Asigra is entitled to judgment on count VII of the complaint.

C.      Misappropriation of Trade Secrets

"To prevail on a claim of misappropriation of trade secrets, a plaintiff must show:  1) the information is a trade secret; 2) the plaintiff took reasonable steps to preserve the secrecy of the information; and 3) the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret."  Incase Inc. v. Timex Corp., 488 F.3d 46, 52 (1st Cir. 2007).

In a footnote, Asigra argues that Atlantis has failed to satisfy the first element of a misappropriation of trade secrets claim because Atlantis did not identify with any reasonable precision the information it claims is subject to protection.  (Docket #13 at 11 n.8).  As it is only raised in a footnote, the court finds that Asigra has waived this argument.[4]  See Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 61 n.17 (1st Cir. 1999) ("[The First Circuit] ha[s] repeatedly held that arguments raised only in a footnote or in a perfunctory manner are waived.")

Asigra also argues that Atlantis has failed to meet the second element of the claim, asserting that, because Atlantis provided its Appliance Code to Asigra for use in a product that it knew would be marketed and sold to the public, Atlantis cannot show that it took reasonable steps to preserve the secrecy of its information.  (Docket #13 at 11-12).  However, the mere fact that the Appliance Code was incorporated into Asigra's product which was available for public purchase

---

[4] For this same reason, the court declines to address Asigra's argument that the misappropriation claims are barred under the doctrine of laches. (See Docket #13 at 10 n.7).

does not necessarily negate Atlantis' claim. Computer programs have been found to constitute trade secrets where the source code is not easily ascertainable or copied by inspection of the program. See Q-Co Indus. v. Hoffman, 625 F. Supp. 608, 617 (S.D.N.Y. 1985) (holding that plaintiff had established a likelihood of success on misappropriation of trade secrets claim where the source code for its commercially sold product was copy protected so purchasing public could not convert the program and would not be able to gain access to the source code). At this juncture, the court finds that Atlantis has plead the second element of a claim of misappropriation of trade secrets. See Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 664 (4th Cir. 1993) ("Secrecy is a question of fact.").

Finally, Asigra argues that it did not employ improper means and/or methods to obtain Atlantis' proprietary information. (Docket #13 at 12). Atlantis alleges in its complaint that, in order to induce Atlantis to grant Asigra a limited right-to-use the Appliance Code, Asigra falsely promised to pay Atlantis by way of its software servicing program. (Docket #1 at ¶ 37). The complaint can be plausibly read to assert that Asigra made this promise, never intending to honor it, in order to induce Atlantis to provide Asigra with the Appliance Code. Hence, the court finds that Atlantis has sufficiently plead the third element, and, therefore, may proceed on its misappropriation of trade secrets claims. Asigra's Motion for Judgment on the Pleadings is denied with respect to counts II, III, and IV of the complaint.

D.     Unjust Enrichment

In count VI of its complaint, Atlantis asserts that Asigra has been unjustly enriched by accepting Atlantis' work and incorporating that work into its product without full compensation to Atlantis. (Docket #1 at ¶¶ 47-50). Asigra argues that count VI of the complaint must be dismissed as it seeks identical recovery as the breach of contract claim in count I. (Docket #13 at 13).

To prevail on a claim for unjust enrichment in Massachusetts, there must be "unjust enrichment of one party and unjust detriment to another party." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (quotation omitted). "Unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." Id. (citing Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts*, § 68.5 (4th ed. 2003)). "Ordinarily, a claim of unjust enrichment will not lie where there is a valid contract that defines the obligations of the parties." Metro. Life Ins. Co. v. Cotter, 464 Mass. 623, 641 (2013) (quotation omitted). This is because unjust enrichment is "an equitable remedy, and it is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law." Biltcliffe v. Citimortgage, Inc., 952 F. Supp. 2d 371, 380 (D. Mass. 2013) (quotation and alterations omitted). A breach of contract is such a remedy, and, as a result, damages between the two theories are mutually exclusive. Lass v. Bank of Am., 695 F.3d 129, 140 (1st Cir. 2012). However, "it is accepted practice to pursue both theories at the pleading stage." Id. (citing Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 295 (D. Mass. 2009) (noting that Fed. R. Civ. P. 8(d), "permits Plaintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if Plaintiffs can only recover under one of these theories")).

At this stage of the proceedings, Atlantis may proceed on both its breach of contract and unjust enrichment claims. Therefore, Asigra's Motion for Judgment on the Pleadings is denied with respect to count VI.

E.      Chapter 93A

In count V of its complaint, Atlantis alleges that Asigra committed an unfair and deceptive

practice in violation of Mass. Gen. Law ch. 93A when, after Atlantis' work was concluded, it

refused to complete payment for Atlantis' services unless Atlantis agreed to assign its rights to the

Appliance Code to Asigra.  (Docket #1 at ¶¶ 45-46).

Section 2(a) of Chapter 93A proscribes "[u]nfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce."  Section 11 of that chapter

creates a cause of action for:

> Any person who engages in the conduct of any trade or commerce and who suffers
> any loss of money or property, real or personal, as a result of the use or employment
> by another person who engages in any trade or commerce of an unfair method or
> competition or an unfair or deceptive act or practice declared unlawful by section
> two or by any rule or regulation issued [thereunder].

Thus, a successful claim under 93A requires a showing of (1) an unfair or deceptive act or practice

on the part of the defendant; (2) an injury or loss suffered by the plaintiff; and (3) a causal

connection between the defendant's unfair or deceptive act or practice and the plaintiff's injury.

Casavant v. Norwegian Cruise Line, Ltd., 76 Mass. App. Ct. 73, 76 (2009).

While "[t]here is no clear definition of what constitutes an 'unfair or deceptive' act[;] [i]n

the extensive case law on Chapter 93A, a common refrain has developed."  Ahern v. Scholz, 85

F.3d 774, 798 (1st Cir. 1996) (internal quotation omitted).  "The objectionable conduct must attain

a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world

of commerce."  Id. (quoting Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510,

1513 (1st Cir. 1989)).  In short, "[a] chapter 93A claimant must show that the defendant's actions

fell within at least the penumbra of some common-law, statutory, or other established concept of

unfairness, or were immoral, unethical, oppressive or unscrupulous, and resulted in substantial

injury to competitors or other businesspersons." Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004) (quoting Quaker State, 884 F.2d at 1513) (alterations omitted). Asigra argues that the dispute between the parties was of a garden-variety business nature and did not rise to the level of rascality required for an actionable 93A claim. (Docket #13 at 14).

"It is well established that a breach of a contract can lead to a violation of Chapter 93A." Id. However, "[a] mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, unless it rises to the level of 'commercial extortion' or a similar degree of culpable conduct." Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000) (internal citations omitted). As plead by Atlantis, the facts support a 93A claim. Atlantis asserts that Asigra refused to make payment on the contract, not due to a legitimate business dispute, but instead as a "wedge" against Atlantis to enhance its bargaining power to attain an assignment of Atlantis' rights to the Appliance Code. Such conduct rises to the level of commercial extortion and is actionable under 93A. See Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) ("Where one party to an agreement employs a breach of contract to gain an unfair advantage over another, the breach a has an extortionate quality that gives it the rancid flavor of unfairness." (quotation omitted)); Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991) ("conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes" (quotation omitted)).

Asigra also argues that, because Atlantis rejected Asigra's request to assign its intellectual property rights to Asigra, Atlantis has not suffered "actual damages" as required under Section 11. (Docket #13 at 14-15). Under Section 11, Atlantis bears the burden of showing that it suffered a loss of money or property stemming from Asigra's extortionate activity. See Arthur D. Little, 147

F.3d at 56.  Atlantis has met that burden.  The pleadings assert that Asigra failed to pay invoices that were due and owing as a means to obtain Atlantis' intellectual property rights.  The loss of money owed under a contract, together with the plaintiff's expenses incurred in attempting to collect the debt, satisfies the loss requirement of Section 11.  Id. at 57 (holding that combination of plaintiff's loss of use of money in addition to expenditures in order to recover the money, including long-distance phone calls and meetings, meant that plaintiff suffered a loss of money or property caused by defendant's act of deception); see also Whitman & Co. v. Longview Partners (Guernsey) Ltd., No. 14-12047-ADB, 2015 U.S. Dist. LEXIS 94100, at *21 (D. Mass. June 16, 2015) (Boal, M.J.), adopted, 2015 U.S. Dist. LEXIS 94099 (July 20, 2015).  Atlantis, who was required to make long distance phone calls to attempt to recover the money owed by Asigra and who seeks its attorney fees for prosecuting this case, has met its burden of showing damages under Section 11.

Finally, Asigra asserts that the 93A claim must be dismissed because there are no allegations that Asigra's acts or omissions occurred primarily and substantially within Massachusetts.  (Docket #13 at 15).  No action under section 11 of Chapter 93A may "be brought or maintained . . . unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."  Mass. Gen. Laws ch. 93A, § 11.  The burden of proof on this matter rests with Asigra.  Id.  In resolving this issue, "a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth."  Kuwaiti Danish Comput. Co. v. Digital Equip. Corp., 438 Mass. 459, 474 (2003).  This "is not a determination that can be reduced to any precise formula. . . . Any

determination necessarily will be fact intensive and unique to each case." Id. at 472-73. "Due to the fact-finding process necessarily involved in evaluating the issue, 'this particular ground for challenging a c. 93A claim -- absent some extraordinary pleading concession by a claimant – cannot be resolved on Rule 12 motions.'" Berklee Coll. of Music v. Music Indus. Educators, 733 F. Supp. 2d 204, 213 (D. Mass. 2010) (quoting Bliss Valley Props., LLC v. Eliopulos, No. 04-1100 BLS, 2005 Mass. Super. LEXIS 291, at *17 (June 2, 2005)); see Back Bay Farm, LLC v. Collusio, 230 F. Supp. 2d 176, 188 (D. Mass. 2002) (citing Amcel Corp. v. Intern. Exec. Sales, Inc., 170 F.3d 32, 36 (1st Cir. 1999) (holding that a Section 11 cause of action attacked via a Rule 12 motion "should survive a 'primarily and substantially' challenge so long as the complaint alleges that the plaintiff is located, and claims an injury, in Massachusetts.")) Atlantis, a Massachusetts corporation located in Uxbridge, Massachusetts, has alleged that it suffered pecuniary damages when Asigra breached its contract. This necessarily impacted Atlantis in Massachusetts. The court finds that these allegations are sufficient to overcome the motion for judgment on the pleadings, although later factual development may reveal that the alleged misconduct occurred primarily outside of Massachusetts.

For these reasons, Atlantis may proceed on its 93A claim; thus, Asigra's Motion for Judgment on the pleadings is denied with respect to count V.

IV.     CONCLUSION

For the foregoing reasons, Asigra's Motion to Strike (Docket #23) is ALLOWED, and Asigra's Motion for Judgment on the Pleadings (Docket #12) is ALLOWED IN PART AND DENIED IN PART.  Judgment shall be entered in favor of Asigra on count VII of the complaint.


<u>/s/ David H. Hennessy</u>
David H. Hennessy
United States Magistrate Judge